ERASTUS B. GOODENOUGH *v.* LEONARD A. HARRIS.

1. Where the mortgagor of chattel property, under an agreement with the mortgagee, made at the time of the delivery of the mortgage, continues in possession of the mortgaged property, and proceeds to sell the same in the usual course of trade, with the view of appropriating the proceeds of sale to the payment of the mortgage debt, the mortgage is void.
2. It is immaterial whether the power of sale is reserved in the mortgage itself, or is conferred by a separate agreement.

GENERAL TERM.—On error.

The facts sufficiently appear in the decision.

*Lincoln, Smith & Warnock,* for plaintiff in error.

*John G. Douglass,* for defendant in error.

SPENCER, J, delivered the opinion of the court. This is a petition to reverse a judgment rendered by Storer, J., at special term.

The action below was in the nature of replevin, to obtain the possession of specific chattels. Both parties claimed under the same source of title—the plaintiff as mortgagee, the defendant on behalf of a judgment creditor. The case was submitted to the court, who found for the defendant, assessing his damages at $262.26. The plaintiff thereupon moved for a new trial, for the reason that the finding was contrary to law and the evidence, which motion being overruled, an exception was taken by him, and judgment entered for the defendant; the alleged error in this, is that the court did not grant a new trial, as asked for.

The facts, as they appeared upon the trial of the cause, are these: The plaintiff gave in evidence a mortgage, in his favor, executed and delivered by S. A. Griffith & Co., on the 9th day of September, 1854, purporting to convey the property in controversy, together with all the goods, and stock in trade, of said Griffith & Co., situated in the store then occupied by them, in Cincinnati, conditioned, as follows:

That whereas, said mortgagors, doing business under the

firm name of S. A. Griffith & Co., are indebted to said Goode-
nough, on two promissory notes; one for $600, dated April 12,
1854, and payable in four months after date, and one for $636,
dated July 12, 1854, payable in like manner, at 90 days after
date; both signed by said Griffith & Co.   Now, if they shall
well and truly pay to said Goodenough the full amount of
said notes at maturity thereof, etc., then said instrument to be
void, etc.   Plaintiff also exhibited in evidence, the two notes
referred to in the condition of the mortgage; on one of which
was indorsed a credit of $65.   He then called S. A. Griffith
(one of the mortgagors) as a witness, who testified that the
mortgage and notes were executed on the day of their respec-
tive dates.   The notes were given for so much money loaned
by the plaintiff to the mortgagors, none of which had been
paid at the time of the mortgage; and that the mortgage
was given for the mere purpose of securing the same—the
mortgagors being, at that time, unembarrassed; that the
property mortgaged, consisted of the stock in trade, and fix-
tures, belonging to a *retail drug store*, then occupied by the
mortgagors; that at the time of delivering the mortgage, it
was agreed between the parties, that the mortgagors should
retain possession of the establishment and sell the mortgaged
property as usual, paying the plaintiff's debt from the pro-
ceeds of sales; and that accordingly they did retain possession
and make sales, up to the time when the defendant seized the
property in attachment; that the whole amount of sales thus
made, amounted to something over one hundred dollars, of
which $65 had been paid over to the plaintiff, and credited
on one of the notes.   The mortgage was duly filed in the
Recorder's office, on the second or third day after its date.
This was all of the plaintiff's evidence.

The defendant then offered in evidence, a transcript of cer-
tain proceedings before N. Marchant, Esq., a justice of the
peace of Cincinnati township, in an action brought by G. W.
Clark, against Griffith & Co., upon which an order of attach-
ment issued, directed to the defendant, as constable of said
township, and by virtue of which he seized the property in

dispute, then in the store and possession of Griffith & Co., as their property, on the 7th day of December, 1854, in which proceedings a judgment was subsequently rendered in favor of said Clark, for $241.90 and costs; and it was further found that the property attached, and replevied, was of greater value than the amount of the judgment in attachment. No other, or further testimony was offered on either side. The court found for the defendant, and assessed his damages to the amount of the judgment and costs; and to set aside this finding, and the judgment thereon, is the object of the present petition.

The only question which arose, or could arise, upon the facts proven, was whether the plaintiff's mortgage was fraudulent and void, as against the subsequent creditors of S. A. Griffith & Co., or whether it was to all intents and purposes *bona fide* and valid, as against them; if the former, the finding and judgment of the court below was right, otherwise erroneous.

There is nothing, in the case, tending in the slightest degree to impeach the fairness and *integrity* of the transaction as between the mortgagors and mortgagees, except the fact, that the former were permitted to retain the possession of the mortgaged property, and make sale of it, in the usual course of business, under an agreement to apply the proceeds in liquidation of the mortgagee's claim; nor does it seem to us that these circumstances, alone, warrant the inference that any fraud, in *fact*, was intended by the parties.

*First.* There was a just debt due to the mortgagee, for which it was natural he should ask some security, especially as one of the notes was *overdue;* then there were no other creditors to be interfered with; and finally the mortgage was put upon record, as *notice* to *subsequent purchasers* and *creditors.* And although the business was going on as usual, there was no proof that the plaintiff, in attachment, was actually deceived by that circumstance, or gave any credit on account of it. There might have been, and probably were, good reasons why the mortgagors should retain possession and sell. The business in which they were engaged, required their *personal skill and*

*supervision.* They were best acquainted with its proper management, and to turn them out, and put the business under the management of others, would have been productive of certain loss to *one* if not *both* of the parties to the mortgage.

But, although no fraudulent intent toward third persons existed, *in fact*, in the mind of either of these parties, at the time of executing this mortgage, and although it may not have been *shown* that third parties gave credit to the false appearances which were held out to the world, of an ownership in the mortgagors, yet it is claimed that the policy of the law presumes that credit may have been, and *was* given, to the false appearances thus held out; and therefore, as to the party giving such credit, it holds void the instrument which would defeat his claim.

There certainly seems much propriety in applying such a principle to the present case. The mortgage was, in fact, a simple instrument of conveyance, conditioned to become *void*, on the payment of the amount expressed in it. It contained no notice upon its face, that the mortgagors were to continue in possession for any length of time; and certainly none that they were to sell and dispose of the property, as though no mortgage had been made, and as though they had still continued owners of the property. As to *one* of the notes, the condition was broken when the mortgage was executed; and as to the other, the condition was broken nearly *two* months before the attachment was issued. Yet the mortgagee took no possession of the property, but still allowed the mortgagors to deal with it as their own. Had a person about to trust the mortgagors, gone to the Recorder's office, and found the mortgage there, on file, he would have had no notice of the *private* agreement existing between the parties, and might well have supposed, from the fact that the mortgagors were in possession of the property, and disposing of it as their own, that the mortgage debt had been fully paid. In such case, therefore, it might, with great propriety, be held, that he was justified in giving credit to the *acts* of the parties, and was bound to inquire no further. Had it been shown, however, that he had *actual*

notice of all the facts, it is difficult to see how he could justly claim that he had been defrauded by a security given for an honest purpose.

But whatever views we might have entertained of this case, if it had come before us disembarrassed of authority, we think it is clearly within the principle, if not within the letter of the case in 16 Ohio, 547, *Collins et al.* v. *Myers.* That was a case where an outgoing partner, having sold his interest in a firm, to his co-partners, took from them a mortgage upon the stock sold, with the increase thereof, to indemnify him against the debts due by the *firm.* The mortgage contained a provision, that the mortgagor should retain possession until the mortgagees should be compelled to pay some of the debts stipulated against, or until they might think their security *endangered.* It does not appear with certainty whether it expressly authorized the mortgagor to dispose of the property or not, but such, at all events, was the *intent* of the transaction. A part of the stock was sold; and out of the proceeds of such sale, as well as upon the credit of Myers, new goods were purchased. The whole stock, new and old, was levied upon by a judgment creditor of Myers, and afterward Myers made an assignment of it for the benefit of *all* his creditors. The court held the mortgage *void,* not only as to the attaching creditor, but as to the assignees also, upon the sole ground that the *power of sale,* vested in the mortgagor, was inconsistent with, and destroyed the *security* intended to be given by the mortgage; and forasmuch, therefore, as it was a security or not, at the option of the mortgagor—that is, inasmuch as he might at any time destroy the whole security, by disposing of the property—it must have been intended as a mere *ward* to keep off other creditors. Whether the reason, thus given, will be entirely satisfactory to others, is not for us to say; it satisfied the court and we must abide by it until better advised. It was of no moment to that case, as viewed by the court, whether the mortgage itself contained an express authority to sell the property, or whether such authority was implied only from the terms of the instrument, or was contained in a

separate agreement. The real question was, had the mortgagor power, by the terms of the agreement entered into between the parties at the execution of the mortgage, to *defeat* the security, at his own option, by the *sale* of the mortgaged property; if so, it was said, the *intention* of the parties could not have been to create a security, but a *ward* to keep off creditors. So far as the *power* to destroy the security is concerned, it may be as effectually exercised under a separate agreement, as under one expressed in the mortgage itself, and if there be any difference between the two cases, it is in favor of the instrument containing the power of sale upon its face; for in such case the transaction is *open*, and none are deceived by appearances. In the other the agreement is *secret;* it contradicts the apparent intent of the instrument, and is calculated to mislead purchasers and confiding creditors, by a false appearance of ownership.

The decision of the court, at special term, was founded upon, and is entirely harmonious with, the authority of the case cited, and will therefore be affirmed.

Judgment affirmed.